OPINION OF THE COURT
Memorandum.
The order of the Appellate Division should be modified by reinstating the judgment of Supreme Court insofar as it convicted defendant of criminal contempt in the first degree on the first count of Indictment No. 1318/79 and the case remitted to the Appellate Division for a determination of the facts (see CPL 470.40, subd 2, par [b]).
In 1979 the Queens County Grand Jury was conducting an investigation of alleged misconduct by employees of the New York State Department of Correctional Services’ Centralized Services Facility. Defendant, the Superintendent of the Centralized Services Facility, was called to testify about allegations that in 1977, while- superintendent, he had used State employees to repair the roof of his home during working hours and used State building materials. He testified before the Grand Jury under a waiver of immunity on June 7 and 14, 1979 and was questioned concerning the allegations. As a result of the investigation defendant was subsequently charged under three separate indictments charging him with two counts of contempt, first degree, perjury in the fourth degree, rewarding official misconduct, second degree, and conspiracy, fifth degree. Following a jury trial of the first indictment containing the contempt and perjury charges, defendant was convicted of the two counts of contempt and acquitted of perjury. He thereupon pleaded guilty to one count of rewarding official misconduct in the second degree in satisfaction of the remaining charges and was sentenced by the court on both judgments.
On appeal the Appellate Division reversed on the law the judgment convicting defendant of two counts of contempt and dismissed Indictment No. 1318/79. The judgment with respect to rewarding official misconduct was also reversed, the plea vacated and the case remitted to the Supreme Court for further proceedings. The People now *1106 concede that the evidence is insufficient to support the second count of criminal contempt, but they urge reversal of the Appellate Division’s order dismissing the first count.
The first count of the indictment alleged that defendant refused to answer legal and proper interrogatories concerning whether State workers under his supervision had engaged in private construction work on his house during their regular work week.
It is established by familiar rules that explicit testimony which is neither incredible as a matter of law nor patently false and which could provide the basis for a perjury charge if later shown to be false, is not a refusal to answer as contemplated by the Penal Law (People v Renaghan, 33 NY2d 991). Conversely, it has been held that the false and evasive profession of an inability to recall events or details which were significant and therefore memorable is punishable as criminal contempt (People v Schenkman, 46 NY2d 232, 237). A general denial followed by professions of an inability to recall particular events which would have left an impression on the defendant had they occurred is the equivalent of a failure to answer (People v Martin, 47 AD2d 883, affd 42 NY2d 882).
The Appellate Division’s reversal is based on defendant’s statement to the Grand Jury that “for the record, I have not seen any men on my roof twenty, ten or five days or less during a week, during the weekdays.” Also after being warned of the possibility of being held in contempt and asked if he had any specific recollection of having seen any employees at his home during the work week in the summer of 1977, defendant replied, “[n]o, I don’t remember. I have no problem with saying yes. I have no problem with saying no. When I say yes, I want to be sure. When I say no I want to be sure. I don’t want to have problems.”
A review of the record, however, reveals that defendant’s statement that he had not seen any men on his roof during the regular work week, unequivocal as it may have been when considered in isolation, was not a definite statement when placed in the context in which it was made. Thus, defendant testified:
*1107 “Q. There is testimony from this workman you saw there on several occasions during the regular work week. Do you understand that?
“A. I do understand that.
“Q. Does my telling you this refresh your recollection as to the testimony you gave in regard to this?
“A. I have given the testimony on my knowledge of what I know I have not seen — for the record, I have not seen any men on my roof twenty, ten or five days or less during a week, during the weekdays.
“Q. Or on your premises?
“A. Or on my premises. To the best of my knowledge, I testified that I do not remember anyone being on my property twenty-five days or less” (emphasis added).
Thus, defendant’s responses were equivocal, couched as they were in terms of his inability to remember the events and details which were the subject of the Grand Jury’s questions. These were the only so-called “unequivocal” answers to be found in a lengthy examination containing many evasive answers.
Moreover, the record amply demonstrates that had the State employees worked on his roof during improper times he would have remembered that fact. Defendant testified that he had been concerned about the legality and propriety of using State workers to perform personal services, that he hired them only after researching the matter, and only after he agreed with the maintenance supervisor of the Centralized Services Facility that the State employees would work on defendant’s roof on their own time. Defendant also testified that he was familiar with the employees and that he would have recognized them if he had seen them at his residence, that it was customary for the workers to arrive at his home before he left for work and that he frequently had to unlock the garage so that they could obtain necessary supplies and equipment for the job. Finally, defendant testified that if he had seen any of the State employees at his residence during the work week, he would recall it and therefore his later inability to recall whether he had or had not seen any employees at his residence during the work week is evidence of equivocation *1108 punishable as criminal contempt (see People v Schenkman 46 NY2d 232, 237, supra).
Chief Judge Cooke and Judges Jasen, Jones, Wachtler, Fuchsberg, Meyer and Simons concur.
Order modified and case remitted to the Appellate Division, Second Department, for further proceedings in accordance with the memorandum herein and, as so modified, affirmed.