■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v Ross G., Appellant.—Appeal by the defendant from a judgment of the County Court, Nassau County (Boklan, J.), rendered May 3, 1989, convicting him of sodomy in the first degree (three counts) and use of a child in a sexual performance, upon his plea of guilty, and sentencing him to four concurrent indeterminate terms of 2 to 6 years' imprisonment.

Ordered that the judgment is modified, as a matter of discretion in the interest of justice, by (1) vacating the provision thereof convicting the defendant of sodomy in the first degree (three counts) and use of a child in a sexual performance and substituting therefor a provision adjudicating him a youthful offender, upon his plea of guilty to sodomy in the first degree (three counts) and use of a child in a sexual performance, and (2) reducing the sentence to a term of six months' imprisonment and five years' probation, with the terms of imprisonment running concurrently with and as a condition of the term of probation; as so modified, the judgment is affirmed, and the matter is remitted to the County Court, Nassau County, to fix the other terms and conditions of probation.

In 1987, Arnold Friedman, a retired high school teacher, was arrested on Federal charges for using the mails to send and receive child pornography. A subsequent investigation disclosed that Friedman, who ran an after-school computer program in his Great Neck home, and his son, Jesse Friedman, had been sexually abusing the young boys who had been regularly attending the computer classes. Arnold Friedman was arrested on State charges with respect to the sexual abuse crimes, and upon his guilty plea, was sentenced, *inter alia,* to 8⅓ to 25 years' imprisonment, in addition to his sentence on the Federal charges. In connection with the investigation of the Friedmans, police were led to the defendant, a friend of Jesse Friedman, who had also sexually abused some of the

boys who had been attending the computer classes. The defendant, who was 15 and 16 years old when he committed the crimes, became repulsed by them, and six months before the Friedmans were arrested, the defendant disassociated himself from Jesse Friedman and his activities. Following the defendant's indictment for a number of sex crimes, including class B violent felonies, the prosecution, with the approval of the victims' families, approached the defendant's counsel and sought the defendant's assistance in strengthening the case against Jesse Friedman, and in providing information concerning two other individuals suspected of being involved in the crimes.

On September 8, 1988, the defendant agreed to cooperate, and the terms of the agreement between the defendant and the prosecution were placed on the record. The prosecution agreed that in return for the defendant's testimony, it would recommend to the sentencing court that the defendant "receive a sentence of no more than six months in jail, youthful offender status, probation and any and all therapy contingent upon that probation which the probation department deems is necessary".

There is no question that the defendant complied with his part of the agreement. The prosecution acknowledged that the defendant "cooperate[d] fully with the Nassau County Police Department and District Attorney's office", and gave extensive testimony before the Grand Jury. Because of the defendant's cooperation Jesse Friedman pleaded guilty, was sentenced to 6 to 18 years' imprisonment, and the two other individuals suspected of being involved in the crimes were brought to the attention of the police.

After receiving the maximum benefits of the defendant's testimony, the prosecution entered into another set of promises, unbeknownst to the defendant, representing to the victims' families that the defendant would not be allowed to plead guilty to anything less than the top counts of the indictment, which were class B violent felonies. This was not made known to the defendant until February 3, 1989, five months after September 8, 1988, the date of his cooperation agreement, and after he had fully performed his part of the agreement, and had supplied the information and testimony which led to Jesse Friedman's guilty plea and imprisonment.

The defendant entered his guilty plea on March 22, 1989, and was sentenced on May 3, 1989. At the time the defendant pleaded guilty, Judge Boklan stated that based on her review

of the defendant's candid revelations before the Grand Jury (the very testimony which the defendant supplied, postindictment, by way of cooperation with the prosecution), she would not grant the defendant youthful offender treatment. The prosecution then rejected the defense counsel's urging that the prosecution consent to a guilty plea to a class D felony, which would have enabled the court to impose a six-month term of imprisonment, in keeping with the prosecution's recommendation. After learning that the court would not grant the defendant youthful offender treatment, the prosecution, by refusing to let the defendant plead guilty to any crime below a class B violent felony, prevented the defendant from being legally sentenced to anything less than the 2-to-6-year term of imprisonment which was imposed. Thus, the prosecution rendered hollow its express promise to recommend a six-month term of imprisonment.

The defendant asserts on appeal that the prosecution's representation to the victims' families, that it would insist on guilty pleas to the top counts, constituted secret, double dealing which violated the "fair import and spirit" of the prosecution's cooperation agreement with the defendant, and that, therefore, the defendant's sentence should be adjusted to reflect the terms of his cooperation agreement with the prosecution.

We find that by extending promises to the victims' families, after negotiating the cooperation agreement with the defendant, the prosecution betrayed the spirit of the cooperation agreement and its promise to the defendant as to the prospects of his receiving youthful offender treatment and six months' imprisonment. The prosecution has acknowledged that the defendant fully complied with his part of the agreement, and that he was instrumental in the prosecution of one of the key figures in the crime. Although the court, when refusing to grant the defendant youthful offender treatment, gave him the opportunity to withdraw his guilty plea, that offer, under the circumstances of this case, could not adequately remedy the situation created by the prosecution. At that point, the defendant had already totally complied with his part of the agreement, and the prosecution had received and fully benefited from his cooperation. We find that the defendant acted to his detriment on the promise of the prosecution, and it was not enough to permit the defendant to withdraw his plea, or to promise to foreclose the use of his Grand Jury testimony if he chose to go to trial (see, People v McConnell, 49 NY2d 340, 347-349).

We cannot countenance a judgment of conviction obtained under these circumstances and therefore vacate the judgment of conviction and adjudicate the defendant a youthful offender. Although there is some question as to whether Judge Boklan applied the proper standard in denying the defendant youthful offender treatment *(see, People v Thiessen,* 76 NY2d 816), we find that under the circumstances of this case, in light of our determination regarding the prosecution's conduct, it would be inappropriate to remit the matter for resentencing. In the exercise of our discretion in the interest of justice, we reduce the defendant's sentence to the very terms recommended and agreed to by the prosecution. Additionally, we note that the defendant has been incarcerated since being sentenced on May 3, 1989, and thus, has served over one year of incarceration. Thompson, J. P., Rubin, Rosenblatt and Miller, JJ., concur.